Good morning, your honors. Christy Utley on behalf of appellant wants a day. May it please the court. This case was set for jury trial last year in 2024. And as your honors are aware, the district court granted summary judgment in favor of the defendants, finding that Mr. Today, the appellant was solely at fault by applying Louisiana Revised Statute 32 colon 81. Your honors. This simply was not and is not a summary judgment case. At a minimum, this is a comparative fault case where fault should have been assessed and allocated by the jury. As a road map, I would like to address the applicability of 32 81 as well as the district court's error and substituting its own judgment for the judgment of the trial of fact. But first, I'd like to start with something argument that that I think should probably be more in the focus. Maybe it wasn't the briefs, but I would like to talk about it today. And that is the issue of the misapplication of the notice pleading standard in its reasons for judgment. The district court acknowledged a genuine issue of material fact likely existed as to a Pele. Mr Bullock's failure to stop the truck upon impact with Mr. Today's motorcycle. However, the court erroneously considered this as a new claim or a new cause of action which had never been pled before. That is not only factually incorrect, it's also a misapplication of the law governing notice pleading. As your honors are aware, Federal Rule Civil Procedure eight a provides that notice pleading is required to give defendants fair notice of the claims against them. Federal jurisprudence goes on to expand on that and says that there are liberal discovery rules. You're missing me. I'm sorry, Your Honor. Clement is in April, Louisiana judge and lawyer as I used to be. But I'm just not getting there with you. How your notice pleading argument is central here. So something I'm missing. Well, Your Honor, because in the district court's ruling, the judge acknowledged that there was a fact as to whether or not Mr Mr Bullock stopped or not. However, the judge went on to say that that fact those facts to support that in the negligence was a new claim where new facts being pled. That is not correct. I understand that we originally filed in state court state of Louisiana. It's a fact pleading states very similar, very liberal, liberal pleading standard. And you flesh out the rest and discovery, right? You got a very summary judgment ruling, right? Correct. All right. Appeal is from the judgment, not from the reasons. So I'm just not making the connection between the notice pleading and you're having to convince us to flip a summary judgment. But maybe it's just me. But given the clock's ticking, if that's the strongest argument you have today, you can go for it. But I've just I do want to address it, Your Honor. If you just give me, I think I can get there. I hope it's your time. I'm just trying to make the connection between notice pleading and rule 56. And I've just missed it. Understand. Well, I just want to say that the facts were pled as to that and the petition itself. We decided in the record paragraph seven and eight of the petition facts were pled that Mr Sade was dragged on his motorcycle and that Mr Bullock did not stop. He had to be flagged down. And then also the negligence claim is also supporting in paragraph 13. Um, in its reasons, the and I understand your your your position on the reasons, Your Honor. I understand that. But I guess what I'm saying is this issue alone on whether or not Mr Bullock stopped or not by itself is sufficient. It's reversible error. That is enough to reverse this because summary judgment was not proper because if he didn't stop when he should have and he dragged Mr Sade and injured Mr Sade, which is what discovery showed the police are overarching issues that they're genuine. This is a material fact, right? Is that what you I mean to get you get you back to the trial court? That's where you're trying to get, right? That is right, Your Honor. That is absolutely right. But I guess the genuine issue, even the court acknowledged that there may be a genuine issue of fact as to that. But that wasn't pled. What I'm saying is it was pled, and it also was fleshed out in discovery because in discovery, the police report showed that Mr Sade didn't. I'm sorry. Mr Bullock didn't stop until he was flagged down. He made the full wide right turn wasn't stopped until the next block. He dragged Mr Sade. Mr Sade's written statement also said he was dragged. He was dragged because the truck didn't stop. So all of that came out. It also came out discovery where Mr Sade testified in his deposition that again, his bike was dragged over 100 ft. And despite the fact he blew his horn chase, Judge Malazzo was a state court judge before she was a federal district judge. Yes. May with 23 15. She had plenty of these things before she got on the federal bench. So it's just a starting point. So cut through the chase and convince us where she missed it. She's not infallible. That's why we have appeals. But just we've read this, but you we got a motorcycle behind a truck. Generally speaking, if you hit somebody from behind, you're presumed, you know, to be at fault, etcetera, etcetera. You got an allegation about something hooking on to the motorcycle, and I couldn't never understand exactly how that was fashion. So I mean, just, you know, go just drive to the point that we should reverse it, you know, because otherwise we're gonna be at the end. At least for me, I'm still not gonna understand more than than what's in the briefs as to how the motorcycles who's behind rear ends the truck that you want us to reverse that and what the judge missed. Well, all all cases cited by both sides. There was only one case that was decided on summary judgment. All the other cases, the facts regarding a rear end collision when their allocations of fault on the other party matter. Let me put it to you this way. Just talk to me about the facts. What are the points you say that they weren't entitled to summary judgment as a matter of law? You might convince me. I don't know about the others, but if you keep telling me about other cases, that's just not helpful to me. Because I'm starting, it's a rear end collision. My only point is that 3218, the rear end collision, the presumption of liability for rear end collision does not preclude comparative fault. That's where I'm going with that. So this is comparative fault case, I believe. I mean, if we could convince the jury, maybe it's not. Maybe all fault is on the bullet. But at minimum, it's a and I think that it is relevant. He didn't say no when he turned. Is that what you're talking about today? You're talking about he was dragging him. He didn't know he was there when he ran into the back of the truck that had all these cables that got caught on his motorcycle. So how do you bring? That is an issue that he didn't. He wasn't seeing your honor because he did. Mr Bullet was driving. He was an energy out of state energy contact tractor from Mississippi in a big bucket truck energy bucket truck had this big mirrors on the side. Why didn't he see Mr today? They were on ST Claude. If you're familiar ST Claude at formally cap and now fast domino taking right in the left lane. The right lane was coned off because of construction. Mr Bullock's a commercial driver. He has a heightened duty as to his driving standard. It's a heightened duty, which the jury would have heard a jury instruction given to them that he had a heightened duty. He, uh, the blinker issue is a big issue because Mr. Today said there was no blinker. He didn't think he was. Mr. Today did not think Mr Bullet was going to turn right because there was no blinker. What difference would it have made if he thought he was going to go straight? He still ran into the back of the truck and got the cables. Oh, well, that stood around his motorcycle that goes into the Eastman case, which is kind of a of a truck because Mr Bullock in his written statement said he made a wide right turn, which means he went left and then he went back right again. If he didn't have his blinker on and he did that movement and Mr. Today was anticipating him not turning right, especially, uh, he, Mr. Today's testimony was I couldn't avoid the accident happened too quickly. He made this maneuver. He took a right and he didn't have his blinker on, uh, viewing the facts in the light most favorable to Mr. Today to the appellant. He didn't have his blinker on. Now, Mr Bullock tries to say, Well, I didn't have it on at the red light. Once the light turned green, I activated it. But then he made this turn. So again, those air through construction zone, not having your blinker on at all or either having on late, which is what 32 104 says. You have to activate your blinker 100 ft at the intersection. All of those go against his heightened duty, and that supports that a heightened duty for commercial driver could have been breached in this case. Um, those are facts that would go to the jury. Uh, there's also the Petrus case. I know you're on even talk about the facts, but the allocation of fault can be even if you have a rearing collision and you have someone who didn't activate their blinker, those air competing standards and all of that can support allocation of comparative fault. So, um, the other issue about the not seeing, uh, not seeing the motorcycle. He, Mr Bullock testified that he didn't see Mr. Today on the motorcycle before, during or after he made that right turn. It's over 100 ft. It's over almost three lanes of traffic. If you saw the photograph, it's the right, the left lane, the right lane. And there's actually a bus lane of wide shoulders, almost three lanes that he had made all the way onto the street that he's turning on. And he never saw Mr Today until he was flagged down. I think they radioed him ahead and said, Hey, you're dragging a motorcycle. And he said, I stopped. I looked in my mirror and I saw him. So he could have seen him in the mirror. That is a fact. I believe that the district court missed as well. So all of these things were pled failure to see the bike failure to stop. Give me a 1, 2, 3, 4, 5. What's the summary judgment? What is the quality of the summary judgment evidence that was before Judge Malazzo? Just take them off. Okay. Uh, well, both Mr. Today, Mr Bullock testified regarding the fact that, um, that I don't want you to tell me what's the matter. Just just tick off for me. 1, 2, 3, 4, 5. What? When I get in there, what does the summary judgment record look like so that we can properly assess whether the judge construed that evidence in a manner most favorable to the other side than you? I just want you to rat a tat tat rather than giving me what somebody said. Well, okay, Your Honor, the judge discounted the issue of the right blinker. We think that's a very strong argument. Either. Either he doesn't have it on at all, or he has it on late. Regardless, if he's making this wide, wide right turn going to the left of the right, I think that that mistress that is consistent with what Mr. Today testified as my grand. I'm sorry. What I want you to tell me is there's the deposition of Mr A. There's a deposition of Mr B. There's a deposition of C. There's a picture of X. I want you to check off of me what the quality of the evidence is not tell me what somebody said. So we know what to look for and to fully appreciate the argument. You understand what I'm saying? Tell me what's there. Mr. Today's testified that no right blinker. Mr Bullock said it late, like bright, late, right blinker. That's what his testimony was. Um, the issue of we have not conceded that this was a rear end collision. I know that I think for our purposes today, even 32 81 applies. There's still compared to fault evidence to support that. But Mr. Today, if you think about it, he said he testified that the truck didn't have a blinker on. He was making this wide right turn, and he got snared. His bike got snared because there were wires or cord or something protruding from the back of the truck or the side of the truck. And that's what ensnared his his bike and drug him or dragged him, I should say, for 100 ft. That was in Mr. Today's testimony. Also, the fact that Mr Bullock again did not see Mr. Today, he could have seen him had he looked in his mirror. He did not see him until he was radioed to stop. And when he looked the mirror and he stopped and looked in the mirror, he could see him in the mirror. So all of those facts should should have gone to the jury. Your well as, um, the again sudden erratic movements of the vehicle. Those all of all the facts that support summary judgment. If you do look at the photograph that was in our brief that we posted a photograph of it in our brief, you will see that the motorcycle is the side of the truck. Upon stop, that's the vehicles that have been moved. At that point, it was on the side and very visible in the mirror as at the turn was made. So at no time he was stopped. He didn't stop to, um, to stop dragging. I should say, Mr Today and the fact that he was dragged according to his medical records, especially the fact he was dragged as well. He injured him. The failure to stop and the dragging and that was pled. And then that was all the evidence supports that your honor. Do you have any other questions? If not, I think I will reserve my time. Thank you. All right. Good morning, Your Honor's Um, Raymond Lewis, on behalf of the appellees, Tyler Bullock and Volt Power LLC and Greenwich Insurance Company. May it please the court. Judge Stewart, uh, I think you you hinted upon the same comment I had when I first got this case, which is I don't understand. Um, this is, I think, a very simple case of a motorcycle rear ending a vehicle, and that motorcycle is 100% at fault for that accident. And it really kind of brings up two concepts. Pretty, pretty simple concepts. The first is the second law of physics, which is two objects cannot occupy the same space, which then leads us to the evidentiary presumption of 32 colon 81. In this case, setting the stage, I think, is important because there's been a lot of things said about what happened or or who saw what or where. But let's remember that this is a electrical wire line bucket truck that is stopped in what is essentially a one lane road. It is 12 ft tall by nine ft wide, and it is stopped dead. Stopped at a red light, not rolling up to a red light, not approaching an intersection. It is dead. Stopped at a red light. Mr. Today on a motorcycle comes up behind our 12 ft by nine ft bucket truck and stops his motorcycle as well. At the red light, Mr. Today is about sitting on a motorcycle. He's four, maybe five ft. I level. There's no way he could have missed this bucket truck. But despite that, and we don't know why, but he allowed his vehicle to get close enough to rear end, make contact with whatever you want to call it. Whatever he did, he tried to occupy the same space at a dead stop as our vehicle. That makes him 100% at fault. And in this idea of well, we could have seen him that your honor is is not what is the evidence in the record. The evidence in the record and it's at page 19 and 20 of our brief in the record. It's 5 16 and 5 17 and also 6 14 and 6 19. But Mr Bullock says I did not see him in my mirrors. I checked my mirrors before I I saw the green light and went to go. I checked my mirrors. I did not see him in my mirrors. I only saw him after he rear ended me, became attached to the bucket truck and somebody flagged me so he was not visible in his mirrors. And Mr Seday's testimony at 6 14 and through 6 19 is important because what Mr Seday says is I came and I stopped right behind the bucket truck, not to the right, not to the left. I stopped behind the bucket truck, which means he's outside the view of the mirrors. So Mr Bullock did not see the motorcycle hit him and then drag him 100 ft. I think Judge Clement, you made a very good point. He didn't. He didn't know a motorcycle had rear ended him. This was not a 40 mile an hour collision where he would have felt the vibrations. This was not a 20 a 10 of 15 of five. This was as per Mr Seday said at 6 20 in the record. This was under three miles an hour. We have no idea why Mr Seday did what he did. But the front handlebars of his vehicle tried to occupy the same spaces ours. He's presumed at fault. I think it's important that when you ask the question, what's the quality of the evidence? And and to her credit, counsel's is trying as hard as she can because there is no quality of the evidence in this case. And that's important because in order to rebut the presumption under 32 colon 81, Mr Seday has the burden of proof of showing that he kept his vehicle under control, that he closely observed Mr Bullock's vehicle that he followed at a he did any of those things. So he cannot rebut the presumption under 32 colon. Did the did the district court assess whether Bullock was comparatively at full? No, because in this instance, under 32 colon 81, Mr Seday is presumed 100% at fault. Um, and in that process, he must rebut that presumption because I tell me if I'm misreading this under Eastman Eastman V. State Farm, once a presumption of negligent supplies, as you say it here, does quote a favored motorist bullet can still be assessed with comparative fault if his or her substandard conduct contributed to the cause of the accident. Well, for starters, your honor in Eastman, which has been sort of miss cited, I think repeatedly Eastman is a three vehicle, a chain reaction collision, which does not apply to the facts of this case. This was not a chain reaction collision. And in fact, in Eastman, what does that have to do with the passage? I just read a favored motorist can still be assessed with comparative fault if their substandard conduct contributed to the cause of the accident. Correct. Vehicles. 35 correct. And in this particular case, there is no evidence that that Mr Bullock did anything wrong. He was at a he was at a red light, some dispute about whether he had activated his turn signal. Well, and that's a good point, because before the oral argument, this idea of the failure to stop dragging the case, and I can talk about that if there are questions about that, the blinker issue was sort of their get out of jail free card, if you will, on summary judgment. But I think Judge Malazzo was 100% correct in identifying that a plaintiff self serving Lee saying, Oh, well, they didn't put their blinker on does not satisfy the passage that you're reading and the concepts that you're reading from Eastman. It doesn't immediately trigger some sort of comparative fault on the part of the lead vehicle. Even if the blinker wasn't on, that wouldn't have anything to do with a motorcycle, not seeing a gigantic truck in the daytime right behind. I 100% agree that the blinkers not on be like the windshield wipers. I mean, just, you know, I mean, if the facts are taken, it's true. And the motorcycle is directly behind this big old truck. Well, he had his motorcycle. I mean, the blinkers on and so forth. Does he say in his testimony I didn't see the blinkers. You know, I thought he was turning or anything else. I don't I didn't read that. That's the argument Council is making. It's very unclear what Mr. Today says he saw or didn't see. I think fundamentally the other issue to sort of major was this business about hooking on to the back of the truck. I mean, which again was his own action. I mean, saying, Well, I pulled up there and I got close, but it's because this wire off the back of the truck hooked me and therefore that transfers the fault into some different dimension there. I liability of the truck for having some faulty off the truck, the hook, the motorcycle, etcetera. I had difficulty understanding how that got into play because I thought it was a rear end collision case. Well, and your honor, I think the difficulty with the record in some respects is that it really became an exercise of throwing whatever they could to see what would stick. And in in sort of to go back to Eastman to in this, there's no evidence of Mr Bullock's negligence. He's at a He's at a dead stop at a red light. And whether Mr. Today ran into the back of him at one or two miles or whether he got right up next to him and somehow clicked on to something that's still Mr. Today's 100% conduct. It's nothing that Mr Bullock did. Counsel cite a case or you cite one where the 32 81 presumption has been rebutted either in a summary judgment case or otherwise and what that evidence would have to be. And so, your honor, I think a comment that you made at the start of this oral argument is a good one for this case. And you said when they started talking about you like those cases don't matter. And I think that's true. And I will respond to the cases that are cited in the briefing. But every case has to be judged on its own facts. Okay, all of the cases that we're about to talk about Eastman, Stevenson, uh, you know, graph of Petrus, whatever we want to talk about. None of them have the same factual circumstances of a lead vehicle at a stoplight and a following vehicle just moving into that person who stopped. And that's what happened in this case. So none of the this is I've searched and I could find no case where we're at a dead stoplight and a vehicle rear ends. And here we are trying to figure out of 32 colon 81. I would I would argue to the court there isn't one because nobody does this. I don't know that, but it has to be one because it's not just written in terms of, you know, it's not an impossibility or so one would assume that they exist. But probably when that happens, they don't show up in this space, meaning they go to trial, they settle or whatever something else. So we can only go based on the reported case. And your honor, I think to if if your lead vehicle is at a stoplight on assuming doing nothing and a motorcycle or something rear ends that individual, I don't know that the lawsuit is postured this way, where the following vehicle sues the lead vehicle, which is really the unique factor in this case as well. But again, as we said, I mean, all of the cases are different from the facts that we have here again. Eastman is a is a chain reaction. Three vehicle collision that was actually more a question of fact about whether there were two collisions or one collision that pushed the other vehicle into the lead vehicle. Stevenson is someone basically stopped him in a in the middle of the lane of travel in the middle of a multi lane road just stopped. And the traffic that was going at speed rear ended it. The only case that's similar . . . . . . I have a question, Judge. Will it ask you where 3281 is at play and where it is possible for a comparative fault to be assessed? I don't remember exactly in her reasons if she talked about it. Is there a requirement on the Louisiana law, in other words, since rebutting the presumption is a possibility, must the district court negate that before triggering the presumption? In other words, must the district court discuss the comparative fault factors or not to dismiss and complete it? Or is the absence of that a basis to say, well, maybe there's a fact issue in summary judgment and property? You understand what I'm asking? I do, Your Honor. I think there's two parts to it. My answer will have two parts. So the first is, I think the absence of the quality of the evidence in this case is why summary judgment was appropriate. So there is no evidence of comparative fault. And I think to get to your direct question is there is no evidence of the three things that the plaintiff is able to prove to rebut the presumption. The presumption is if you are the following vehicle, you hit the speed vehicle, you're presumed at fault. But as I mentioned before, you can rebut it by showing you kept your vehicle under control. You didn't follow too closely and that you closely observed the vehicle in front of you, which I think is critical in this case. And the district court said in this particular instance, under these specific facts that Mr City did not follow with a correct amount of distance. He didn't closely observe the 12 ft by nine ft bucket truck that he ran into. So the district court said, Look, yes, of course, 32 colon 81 is triggered. Did you give me evidence that you can rebut that presumption? And then they did not. They could not come up with that quality of evidence. Um, any testimony by the motorcycle driver that he thought the truck was gonna go, gonna go forward instead of turning right because he didn't see a signal. But even so, was he trying to pass him if the truck went straight and he's trying to pass on the right? That's what motorcycles do. So Mr. Today denies that he was trying to pass on the right. We put in the briefing that while there is no direct proof of this, it's the only explanation that matter that really makes sense. In this case, it doesn't make sense that he's coming up to a stop. And remember, he's on a motorcycle. So when he stopped, he's got at least one or two ft planted. So he's planted to the ground so he could have shuffled too close with his feet. He could have shuffled backwards, whatever it was. We don't know why he came into contact with with the bucket truck we have. And again, we briefed it. It's not. The evidence is not on the record. But I think the only assumption you can make is that remember he was trying to follow a friend to a restaurant. The friend made it through the red light. He got stuck at the red light, but he didn't know where the restaurant was. So he lost his GPS. And so we needed to go find the person that he was trying to follow. So what we think is that he tried to shoot the gap, and that's how he got in the position that he was. But again, that's not in the record. It's the only thing that makes sense in this case. It's the only thing that gives us some sort of response to Judge Stewart. A question of I don't get it. I don't understand. I didn't either. That's the only thing we could figure out. But again, to his credit, Mr. Today says that that's not the case. Before we leave the blinker issue, though, I do want to point out. I think the only case that's even closely similar is the journey that case from the Third Circuit, the State Court, Louisiana. It's the one that we cite. And while Jeanette does not involve a motorcycle and a bucket truck stopped at a red light or a one lane collision at no speed, what Jeanette tells us is that the question of whether a blinker is on or off is not necessarily determinative of the legal cause of the accident. And I think in in journey, basically, the individual sort of speeding down the road, and there's a police officer who's doing a U turn to go back to a house. He missed the address. And so as the police officer turns into the road to do the U turn, the journey vehicle doesn't see a blinker, doesn't know what it's doing. So it swerves. It flips. And there's actually some pretty serious injuries in that in that case. Well, what the court said was that journey is the following motorists, and I think the quote is very good, and I think it applies here. But in in journey, they say journey had all the information he needed to avoid this accident, regardless of whether Aubrey, the police officer, signaled a turn. I think you can pluck the name of the parties in journey and put in the name of the parties here, and it applies 100% equally. Mr. Today had all the information. I would argue he was. He had more information than Mr. Journey did, because in in the journey case, Mr. Janay is actually going about 25 40 miles an hour between 20 and 40 miles an hour here. Mr. Today had even more information. He's had a dead stop with a foot planted on the ground to balance himself and still as the light turns green, he makes contact with our vehicle. It just it doesn't add up. What's your response to council opposites notice pleading argument? So, Your Honor, I noticed that as well. I will say that, um, that really only came up in their opposition to our summary judgment. And again, I think that was a reflection of the lack of the quality of the evidence. What they said was, is that because Mr Bullock saw Mr today in his rear view mirrors, which again is not the evidence, as we said before, the actual evidence is that he was behind him. He didn't see him in the mirrors. It's the 5 16th of 5 17 in the record. And so what they say is that at some point, Mr Bullock must have known that Mr. Today was attached to his truck and that Mr Bullock drug him for 100 feet or yards, whatever they want to say, and that he should have known he was dragging a motorcycle that hit him, and he should have stopped. It's a failure to stop late argument, I guess. But the biggest problem there was it only ever came up in their opposition to the summary judgment. It was a complete surprise to us that that was even remotely something they argued. Because if you look at their petition, pages 19 and 20 in the record, they never plead a negligent stopping or a failure to stop after impact. They never plead that ever. It was never an issue into the opposition. And so the district court was, I think, unquestionably correct to say you can't raise this sort of new claim, one that I would say has zero evidence as well in your opposition solely to defeat the summary judgment. So she rejected that aspect of it, upheld the applicable pleading requirements and in both state and federal court and said, I'm not going to consider that is creating an issue of fact. And even again, I think there is no support for the claim. If the even going to entertain that aspect again, you look at Mr Bullock's testimony. And again, I think even the testimony they recognize in oral argument, which is the moment someone flagged him down, he stopped the moment he knew something was going on. He stopped. Then he was able to look in the rearview mirror and see what was going on. But again, this is an under three mile an hour accident. He had no idea that there was a motorcycle attached to his vehicle. So I think your honors, we believe that 32 colon 81. The presumption applies. It has not been rebutted. There's no evidence of of comparative fault in this case and that the district court was correct to dismiss to dismiss this case. Mr. Today had all the information he needed to avoid the accident, and he just didn't. So we would ask that the district court's judgment is affirmed. We appreciate your time. All right. Thank you, sir. All right. You have right of rebuttal. Thank you, Your Honor. Again, uh, what did Mr Bullock do? He didn't stop. He didn't stop. That is true. And that was completely pled. That was completely, uh, all through discovery. We've cited in our brief. I won't go on about it anymore right here. But also, Mr. Today said, I blew my horn and he didn't stop. He still dragged me for 100 ft. So that evidence is well goes to the fact that Mr Bullock was negligent in not stopping and not seeing also as well. There is no accident reconstruction. There were no experts. Judge Malaza did correctly exclude the evidence of the person who came out to investigate for the PD. Um, so there's no evidence to say what could have what was seeing what was not seen at the red light from the bike being behind the truck. What we do know, though, is that once Mr Bullock turned onto Fats Domino and was radioed to stop, he stopped. He looked in his mirror and there was missed. There was the bike. He could visit. It was visible in the that is a factual issue that is in the record. But there's no evidence at all from an expert opinion as to the speed of vehicles as to what could have been seen behind the truck at all. So what we have are the facts. Um, also, um, Judge, um, will it? You also talked about Eastman. And yes, that is what Eastman says and actually also goes on to talk about the sudden emergency doctrine in the unpredictable driving, which is what we talked about with no brink or late blinker taking this wide right turn and that being unpredictable. The fact that there is no blinker and that the truck took a wide right term that the right side of this coned off when you can't hit him. No, Your Honor. It was moving. The green light had come on. There was a red light. The tide started to turn green, and they were all proceeding. All the traffic was proceeding. It was coned off to the right. But what difference does the blinker or no blinker make? Because it's consistent, Your Honor, with the fact that it's just the day his his account of what happened. He's the only person that saw it. Mr Bullock didn't see it. He said that he didn't think that that the truck was turning right because there was no blinker. And then he's doing this wide right turn. And the snaring actually does make sense if you think about a wide right turn because he's going left and back right. And if you look at the photograph, I did a page eight of our brief bikes on the side. That's it. That's it. Resting. The bike is on the side. Wires are snared there. There are other photographs in the record as well. So that's why I think the blinker does go. It supports Mr Today's account of what happened. Um, also, the, uh, Kyle case is actually passed on the right case. We don't agree that that's what happened. But even if even if Mr Today was trying to pass on the right, the Kyle case took that, uh, violation of the 32 74 after a full trial on the merits and only 25% fault was placed on the motorcycle in that case. So again, compared to fault applied even in passing on the right scenario. What is the percentage of fault you saying should be assessed to the truck driver to fade to put the blinker on? Is that what you're saying? Uh, and as well as not stopping when the horn was blown and not seeing Mr Today in the on the motorcycle and his big mirrors that are on the side of the in a motorcycle behind his big old truck. No, Your Honor. He's negligent in in in dragging the motorcycle 100 ft from being angled this way and then taking a right and going all the way with the bike being dragged toward to the side of the truck because the vehicle in front saw the truck saw the bike to the side of the motorcycle being dragged up for all that distance and the horn was being blown. So he was negligent in that. I do want to address if you would allow me the journey case, that case, the Third Circuit case, only summary judgment case that has been cited to you. Everything else trial the merits because compared to fault allocation of fault goes to the jury. In that case, that was not a rear end collision. The plaintiff lost control. Their vehicle went to a ditch. There was an issue of whether or not there was a blinker from the following vehicle. I'm sorry, the preceding vehicle. But also the plant, the plaintiff who sued that went in the ditch was, uh, in talks. Well, there was evidence that he was intoxicated. He was on drugs. He had his little small Children in the vehicle and he didn't have a driver's license. So under all of those facts, it's not. It's no wonder that summary judgment was granted and in that case, but that was not a rearing place is very distinguishable from the facts that we have here. All the other cases are more on point and they allowed the issue of fault and allocation of fault to go to the jury. Thank you. Thank you. Council argument. Thank you. Council of the side. So always an adventure being pulled back into the civil code. At any event, this concludes the arguments this week. But this panel, the argued cases as well as the non argued cases will be submitted. And with that, this court stands adjourned.